# SUBCONTRACT AGREEMENT

This Subcontract Agreement is entered into this __10__ day of _____October_____ 2006, by and between, **TROY CONSTRUCTION** a Texas Limited Partnership, having its principal offices at 8521 McHard Road, Houston, Texas 77053 (hereinafter referred to as "CONTRACTOR") and JOHNSON CONSTRUCTION (hereinafter referred to as "SUBCONTRACTOR").

## WITNESSETH:

WHEREAS CONTRACTOR does on occasion enter into a contract with various companies (hereinafter referred to as "OWNER") requiring services.

WHEREAS, SUBCONTRACTOR has satisfied itself as to the contents, terms and conditions of the work, hazards involved and all other items pertaining to the work contemplated to be done, and SUBCONTRACTOR desires to perform hereunder the portion of said work and construction referred to in paragraph one (I) hereof, it is hereby stipulated and agreed by and between the parties as follows:

NOW, THEREFORE, and in consideration of the mutual covenants herein contained, and in consideration of the compensation herein provided to be paid by CONTRACTOR to SUBCONTRACTOR, the parties hereto do agree as follows:

I.  **SCOPE OF WORK**
    A.  Supervise/coordinate all work, documentation and material procurement, for work to be performed as outlined in Exhibit A, attached, on behalf of Troy Construction LLP.
    B.  Should the proper and accurate performance of the work depend upon the proper and accurate performance of the work not included in the AGREEMENT, SUBCONTRACTOR shall use all necessary means to discover any defects in such other work and shall report said defects in writing to CONTRACTOR before proceeding with the work, and shall allow CONTRACTOR a reasonable time to remedy such defects. SUBCONTRACTOR shall cooperate with other contractor or subcontractors on the work and shall not commit or permit any act which will interfere with the performance of the work by CONTRACTOR or by any other contractor or subcontractor.
    C.  Except for the items, if any, provided hereinafter in paragraph two (II) hereof to be furnished by CONTRACTOR or OWNER, SUBCONTRACTOR, at his sole cost, expense and risk, shall furnish on the job site all labor, materials, tools, equipment, vehicles, appliances, power, fuel, supplies, and all other things necessary for or required by SUBCONTRACTOR'S performance of the work and construction covered hereby.
    D.  SUBCONTRACTOR shall, at all times during the progress of the work, except as authorized by CONTRACTOR to the contrary, keep at the job site a competent foreman or representative, satisfactory to CONTRACTOR and OWNER, who shall receive and execute on the part of SUBCONTRACTOR such notices, directions, and instructions as CONTRACTOR or OWNER may give. Said representative shall not be changed without the consent of CONTRACTOR. All of the employees of SUBCONTRACTOR engaged in the work shall be subject to the rules and regulations at any time promulgated by CONTRACTOR or OWNER for the safe and orderly conduct of all operations upon the property of CONTRACTOR or OWNER where the work is to be performed, and SUBCONTRACTOR shall enforce the keeping and observance by all of its employees of such rules and regulations. CONTRACTOR and/or OWNER shall have the right to require the removal from the work any employee of SUBCONTRACTOR, or any of its subcontractors, who, in the opinion of any one of them, is not qualified to perform the work assigned to him or is guilty of improper conduct. SUBCONTRACTOR under the terms of this agreement is an independent contractor and nothing contained herein shall be interpreted to the contrary.
    E.  SUBCONTRACTOR shall do the work in accordance with drawings, specifications, and instructions issued by CONTRACTOR or OWNER, in the best and most workmanlike manner, by qualified, careful, and efficient workers and in strict conformity with the best standard practices and in full compliance with any National Codes or Local Codes as might be more stringent and governing. SUBCONTRACTOR warrants that it will perform its work in accordance with the standards of care and diligence normally practiced by recognized firms in performing services of a similar nature. If, during the one (1) year period following completion or termination of SUBCONTRACTOR'S work, it is shown that these standards have not been met, and CONTRACTOR has promptly notified SUBCONTRACTOR in writing of such failure, SUBCONTRACTOR shall perform, at its cost, such corrective work as may be necessary within the original scope of its work to remedy such deficiency. Except to the extent borne within the scope and limits of insurance provided in Paragraph IX.C. hereof, this remedial obligation shall constitute SUBCONTRACTOR'S sole liability and CONTRACTOR'S exclusive remedy with respect to SUBCONTRACTOR'S work and the activities involved in the performance, irrespective of the SUBCONTRACTOR'S fault or negligence.

-1-

**EXHIBIT**

tabbies

_B_

II.    **ITEMS FURNISHED BY CONTRACTOR OR OWNER:**
Materials as provided by Shell Oil Company or Troy Construction.

III.    **COMMENCEMENT AND PROSECUTION OF WORK**
A.    SUBCONTRACTOR shall commence actual work on the job site hereunder within 5 days after receiving notice from CONTRACTOR to commence said work.
B.    After said work is so commenced, SUBCONTRACTOR shall prosecute said work diligently and without unnecessary delay or interruption to completion; provided that, in so doing, SUBCONTRACTOR shall stage and schedule his performance hereunder so as to fit in with the work and construction of CONTRACTOR under the PRINCIPAL CONTRACT and of other subcontractors.

IV.    **COMPLETION OF WORK**
SUBCONTRACTOR shall use all reasonable efforts to complete all the related services hereunder on or before a date to be agreed upon as respect to this SUBCONTRACT.

V.    **SUBCONTRACTOR'S MATERIALS AND EQUIPMENT**
A.    When performing procurement services SUBCONTRACTOR shall acquire the best available vendor and contractor warranties on behalf of CONTRACTOR and/or OWNER, but shall not itself have any liability with respect to materials or equipment purchased or fabricated.
B.    SUBCONTRACTOR SHALL INDEMNIFY CONTRACTOR AGAINST, AND SHALL HOLD CONTRACTOR HARMLESS FROM, ANY AND ALL CLAIMS, SUITS, DAMAGES, AND JUDGEMENT, FOR INRINGEMENT, OR ALLEGED INFRINGEMENT, OF ANY PATENT OR FOR THE VIOLATION, OR ALLEGED VIOLATION, OF ANY PATENT RIGHTS WHICH MAY ARISE OUT OF SUBCONTRACTOR'S PERFORMANCE HEREUNDER, INCLUDING ALL CONTRACTOR'S COSTS, EXPENSES, ATTORNEY FEES, AND EXPENSES OF LITIGATION AND INVESTIGATION THEREWITH.
C.    THE INDEMNIFICATION ABOVE SHALL INURE TO THE BENEFIT OF THE CONTRACTOR, WHETHER THE DAMAGES OR ALLEGED DAMAGES ARE CAUSED IN WHOLE OR IN PART BY SUBCONTRACTOR, OR WHETHER IN CONCURRENCY WITH THE CONTRACTORS ACTIONS.
No patent or patent-pending article, method, or device which involves or requires the payment of any license fee or royalty in addition to the purchase price shall be used in connection with the work under this SUBCONTRACT AGREEMENT without prior approval of CONTRACTOR.

VI.    **EXTRA WORK AND CHANGES**
A.    SUBCONTRACTOR shall be obligated, with respect to the portion of the project covered by this SUBCONTRACT AGREEMENT, to perform such extra work and to make such changes as the CONTRACTOR shall be obligated to perform, provided that no extra work or change under this SUBCONTRACT AGREEMENT shall be recognized or paid for unless agreed to in writing before the work is done or the change is made. In such event, such writing shall specify in detail the extra work or change desired and the price to be paid or the amount to be deducted, according to whether such extra work or change increases or decreases the amount to be paid hereunder. Any such writing signed by SUBCONTRACTOR'S representative on the job site shall bind SUBCONTRACTOR.
B. The SUBCONTRACT PRICE shall be adjusted equitably in reasonable and appropriate amounts to cover increases and/or decreases in SUBCONTRACTOR'S costs as a result of the following:
(i)     Changes are made by CONTRACTOR and/or OWNER in SUBCONTRACTOR'S scope of work.
(ii)    Basic design conditions are changed or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inherent in the work, are encountered.
(iii)   Any part of SUBCONTRACTOR'S work is delayed or suspended by CONTRACTOR and/or OWNER or delayed by others performing work for OWNER at the job site, or any changes in the conditions under which the work is done or made by CONTRACTOR and/or OWNER.
(iv)    Acts of God, acts of government, lack of allocations or priorities on CONTRACTOR and/or OWNER-provided material adequate for efficient and economic scheduling of the work, strikes or other concerted acts of workmen, war, deterioration of the world situation creating abnormal variations in world markets, sabotage, unavailability, substitutions or diversion of labor or materials, unforeseeable severe weather or floods, and other causes beyond SUBCONTRACTOR'S control and without the fault or negligence of SUBCONTRACTOR, assuming that CONTRACTOR'S prime contracts similarly provides for additional costs provisions within the Force Majeure.

In connection with any such change, addition, or event, SUBCONTRACTOR shall promptly submit in writing to CONTRACTOR the amount by which SUBCONTRACTOR proposes that the SUBCONTRACT PRICE shall be adjusted, and the CONTRACTOR and the SUBCONTRACTOR shall thereupon agree in writing as to the adjustment in the SUBCONTRACT PRICE. The parties agree that, so far as reasonably possible, no additional work shall be

performed or additional or different materials or equipment furnished until the amounts of the adjustments with respect thereto have been mutually agreed upon. In no case, however, shall SUBCONTRACTOR perform any such additional or different work or furnish additional or different material or equipment until CONTRACTOR has authorized SUBCONTRACTOR in writing to proceed therewith.

## VII. PAYMENT TO SUBCONTRACTOR

A. For all work, construction, and services of SUBCONTRACTOR hereunder, SUBCONTRACTOR shall receive, and CONTRACTOR shall pay, as SUBCONTRACTOR'S total compensation hereunder, subject to acceptance and approval by CONTRACTOR, the sum of which shall be increased or decreased on account of any extra work or changes, as agreed by the parties hereto.

It is understood that the compensation to be received by SUBCONTRACTOR as agreed upon by the parties hereto shall include all sales taxes or use taxes or other taxes which may become due on account of the work performed hereunder, unless CONTRACTOR and SUBCONTRACTOR specifically agree in writing, prior to the commencement of such work, that in addition to paying the agreed compensation, CONTRACTOR will bear any one or more of said items of taxation or will reimburse SUBCONTRACTOR the amount thereof. In the absence of such an agreement in writing, it will be conclusively presumed that SUBCONTRACTOR will not be entitled to any payment (in addition to the agreed compensation) to cover the payment of any such taxes.

B. CONTRACTOR shall pay SUBCONTRACTOR for work performed hereunder as the work progresses as outlined in Exhibit (B). Each such payment shall be One Hundred per cent (100%) of the amount of such estimate and shall be made, in not to exceed Thirty (30) days after the receipt of invoice.

However, CONTRACTOR shall retain the right to maintain 10% of the gross amount monthly Payment Request and such sum shall be accumulated and not be released to SUBCONTRACTOR until final payment is due.

C. Monthly progress payments to SUBCONTRACTOR shall in no way imply approval of SUBCONTRACTOR'S work.

D. SUBCONTRACTOR acknowledges and agrees that its failure to make timely payments to its subcontractors, laborers, material men, and suppliers shall constitute a material breach of this Agreement.

E. Regarding FINAL PAYMENT, CONTRACTOR shall make Final Payment to SUBCONTRACTOR after the Work is complete and accepted by CONTRACTOR and further providing that SUBCONTRACTOR shall have furnished CONTRACTOR with an Affidavit and Final Lien Waiver as satisfactory evidence that all labor and material accounts incurred by SUBCONTRACTOR in connection with this project have been paid in full.

## VIII. INDEMNIFICATION AND INSURANCE

A. IN ADDITION TO SUBCONTRACTOR'S OBLIGATIONS TO INDEMNIFY CONTRACTOR UNDER ANY OTHER PROVISIONS OF THIS SUBCONTRACT AGREEMENT, SUBCONTRACTOR AGREES TO PROTECT, DEFEND, INDEMNIFY, AND SAVE CONTRACTOR AND BY OTHERS FOR WHOM THE CONTRACTOR MAY BE WORKING, THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS, HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, AND EXPENSES, INCLUDING COURT COSTS AND ATTORNEY'S FEES, LOSSES AND LIABILITIES AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER ON ACCOUNT OF ILLNESS OR INJURY TO PERSONS, INCLUDING DEATH, OR LOSS OF OR DAMAGE TO PROPERTY WHICH MAY IN ANY WAY RESULT FROM, GROW OUT OF, OR ARISE IN CONNECTION WITH THE PERFORMANCE OF THE WORK UNDER THIS SUBCONTRACT AGREEMENT, WHERE SUCH ILLNESS, INJURY, DEATH, LOSS, OR DAMAGE IS CAUSED, OR ALLEGED TO HAVE BEEN CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENT ACT OR OMISSION OF SUBCONTRACTOR, ITS OFFICERS, DIRECTORS, EMPLOYEES, SUBCONTRACTORS, AGENTS, SERVANTS OR REPRESENTATIVES. SUBCONTRACTOR SHALL FULLY DEFEND ANY SUCH CLAIM, DEMAND, OR LAWSUIT AT ITS SOLE COST AND EXPENSE EVEN IF SAME IS GROUNDLESS. TO THE EXTENT THAT THIS AGREEMENT PROVIDES THAT THE SUBCONTRACTOR WILL INDEMNIFY AND SAVE HARMLESS CONTRACTOR FROM LIABILITY CLAIMS, DEMANDS OR SUITS, IT IS THE INTENTION OF SUBCONTRACTOR THAT SUCH INDEMNITY SHALL APPLY TO THE EXTENT OF SUBCONTRACTOR'S NEGLIGENCE.

B. It is hereby understood and agreed that CONTRACTOR and SUBCONTRACTOR will indemnify and save harmless each of the other aforementioned entities from any and all liability claims, demands, losses or suits (including court costs and attorneys fees), resulting in illness and injury to persons, including death, and or property damage, which may have been caused, or alleged to have been caused, by the sole negligent act or acts of an individual entity, its officers, directors, servants, agents, representatives, employees or subcontractors. SUBCONTRACTOR'S liability under this paragraph, VIII B., shall be limited to the extent borne within the scope and limits of insurance provided in Paragraph VIII. C. hereof. It is the express intent of this Paragraph that each party, to the extent provided herein, will indemnify the others for its own negligent acts and/or omissions. This indemnity provision will inure to the benefit of the individual parties which comprise the construction group. Further, each party agrees to include the other members as an Additional Insured as their interests may appear under its general

liability, auto liability and excess liability policies, and similarly agrees to provide a Waiver of Subrogation in favor of the other entities, but only to the extent that this Waiver applies to the intent of this Paragraph VIII.B. hereof. Both Additional Insured and Waiver of Subrogation provisions will be confirmed by the issuance, receipt and acceptance of the applicable certificates of insurance by each entity.

C. During the effective period hereof, SUBCONTRACTOR shall obtain and maintain in effect, at SUBCONTRACTOR'S sole expense, with good and solvent corporate insurers satisfactory to CONTRACTOR, the following policies of insurance:

1. WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY
   a. Statutory Workers' Compensation in compliance with the laws of the state in which work or services may be performed by SUBCONTRACTOR hereunder.
   b. If applicable, United States Longshoreman's and Harbor Worker's Compensation Act and as amended and extended by the Outer Continental Shelf Land's Act.
   c. If applicable, Voluntary Maritime II Coverage, including transportation, wages, maintenance, and cure.
   d. If applicable, provision that claims "in rem" shall be treated as claims against the SUBCONTRACTOR.
   e. Occupational disease coverage.
   f. Additional medical coverage.
   g. Coverage B Employers Liability applicable to all provisions outlined above in the following limits:
      - $1,000,000 each person
      - $1,000,000 each accident

2. COMPREHENSIVE GENERAL LIABILITY INSURANCE
   Such insurance will cover all operation in all states in which work or services may be performed hereunder by SUBCONTRACTOR without exclusions, restrictions, or limitations relating to explosion, collapse, or underground hazards.
   a. Independent Contractors coverage for work let or sub-let.
   b. Contractual liability specifically covering liabilities assumed under this agreement.
   c. Products liability covering all completed operations.
   d. Limits of Liability:
      - $2,000,000 General aggregate
      - $2,000,000 Products and completed operations aggregate
      - $1,000,000 Each occurrence
      - $1,000,000 Personal injury an advertising liability
      - $ 50,000 Fire legal liability
      - $ 5,000 Medical payments

3. AUTOMOBILE LIABILITY INSURANCE
   Such insurance will cover all owned, non-owned, and hired vehicles.
   a. Limits of Liability:
      - $1,000,000 Combined single limit - bodily injury
      - $1,000,000 Uninsured and uninsured motorist

4. UMBRELLA INSURANCE
   Limit of liability: $5,000,000 per loss and in the aggregate

5. MARINE LIABILITY INSURANCE
   If watercraft are owned or chartered by SUBCONTRACTOR, Marine Liability Insurance fully covering the operation of any such watercraft with a limit of $100,000 each occurrence or the actual cash value of the highest valued vessel, whichever is greater, for bodily injury, death, or property damage combined. This insurance shall provide that any action "in rem" against a vessel owned or chartered by SUBCONTRACTOR shall be treated as though it were an action against SUBCONTRACTOR. (The coverage required by this paragraph may be contained to some extent in other insurance listed elsewhere herein.)

NOTE: All insurance companies represented herein must maintain a current AM Best Rating of A-VI or better.

C. CONTRACTOR shall be named as additional insured under all applicable insurance policies required under this SUBCONTRACT AGREEMENT except workers compensation and all such policies shall contain a waiver of subrogation in favor of CONTRACTOR. Certificates of Insurance shall be furnished to CONTRACTOR by SUBCONTRACTOR from time to time as reasonably requested by CONTRACTOR and CONTRACTOR shall have the right to inspect the original policies at all reasonable times. Failure of SUBCONTRACTOR to obtain and maintain in effect any of said insurance policies, to furnish certificates of insurance, or to allow inspection of policies

shall be sufficient cause to allow CONTRACTOR to exercise its take-over rights under paragraph XV.A. hereof. In the event of SUBCONTRACTOR'S failure to obtain and maintain said insurance, SUBCONTRACTOR agrees to indemnify and hold harmless CONTRACTOR and OWNER against all loss, expense, and outlay whatsoever, including attorney's fees, which CONTRACTOR could have avoided or for which CONTRACTOR could have been reimbursed if CONTRACTOR had obtained and maintained said insurance. Further, **CONTRACTOR shall have the right to withhold progress payments from SUBCONTRACTOR if the contractually required certificates of insurance (or any other acceptable verification of coverage) have not been received and reviewed by CONTRACTOR at time progress payment is due.**

## IX.    DEFECTIVE WORK AND CLAIMS

Payments otherwise due may be withheld by CONTRACTOR on account of defective work not remedied, claims filed, evidence indicating probability of filing of claims, failure of SUBCONTRACTOR to make payments properly to its subcontractors or to make payments for material or labor, or a reasonable doubt that the Sublet Work can be completed for the balance then unpaid. If the said causes are not removed within 48 hours after written notice, CONTRACTOR may rectify the same at SUBCONTRACTOR'S expense. CONTRACTOR may offset against any sums due SUBCONTRACTOR hereunder the amount of any liquidated or unliquidated obligations of SUBCONTRACTOR to CONTRACTOR, whether or not arising out of this agreement. SUBCONTRACTOR agrees to be bound by all the provisions of Exhibit A, including but not limited to provisions related to quantities, measurement and payment, change orders, extra work, variations in plans, time extensions and claims. CONTRACTOR agrees that it will present to OWNER any reasonable claim for payment, time extension or any other reasonable item which SUBCONTRACTOR, in good faith chooses to submit, provided that SUBCONTRACTOR agrees to prepare all notices in a proper manner sufficiently in advance of the time for notice to permit CONTRACTOR to submit the notice. SUBCONTRACTOR may not recover more from CONTRACTOR than the amount CONTRACTOR recovers from OWNER in its recovery on claims. All extra work and change orders must be authorized in writing and signed by CONTRACTOR. SUBCONTRACTOR shall furnish CONTRACTOR time sheets, invoices and other substantiating data necessary to satisfy CONTRACTOR and OWNER'S requirements. If there appears to be variations or discrepancies of dimensions, quantities, or other matters set forth in the plans or specifications in support of Exhibit A, SUBCONTRACTOR will bring promptly the matter to the attention of the CONTRACTOR in writing. All claims which SUBCONTRACTOR has to assert against CONTRACTOR must be presented in writing to CONTRACTOR not later than 10 days after SUBCONTRACTOR is aware or should be aware that a claim will or does exist, even though the exact nature of the claim must be presented to CONTRACTOR in writing as soon thereafter as SUBCONTRACTOR has or should have such information, and SUBCONTRACTOR hereby waives all claims not presented as provided herein.

## X.    TAXES, LICENSES, AND PERMITS

SUBCONTRACTOR shall procure and pay for all necessary permits and licenses, except those to be procured by OWNER or CONTRACTOR. SUBCONTRACTOR shall observe and abide by all applicable laws, regulations, ordinances, and other rules of the State, territory, or political subdivision thereof, wherein the work is done, or by any other duly constituted public auto

## XI.    LIENS

SUBCONTRACTOR shall not file or cause or permit to be filed any lien for labor, services, materials, or supplies against the property of OWNER involved herein. If any such lien should be filed, SUBCONTRACTOR shall cause said lien to be released and discharged within five (5) days after it is filed; or, if SUBCONTRACTOR should fail to do so, CONTRACTOR shall have the right to deduct the amount required to cause said lien to be released and discharged from any money at any time due hereunder to SUBCONTRACTOR and to procure the release and discharge of such lien. In such latter event, if the amount due SUBCONTRACTOR hereunder is not sufficient to release or discharge said lien, SUBCONTRACTOR shall immediately pay to CONTRACTOR deficiency.

Not later than ten (10) days after SUBCONTRACTOR has completed performance under this SUBCONTRACT AGREEMENT, SUBCONTRACTOR shall furnish to CONTRACTOR lien waivers of, and evidences of payment to, laborers, mechanics, material men, and all others who may be able to file a lien or claim against the property of OWNER involved herein.

## XII.    RECORDS AND AUDIT

A.    SUBCONTRACTOR agrees to keep records and books of account pertaining to SUBCONTRACTOR'S work.

B.    CONTRACTOR or OWNER shall at all times be afforded proper facilities for inspection of the work and shall at all times have access to the premises, work and materials, to all books, records, correspondence, instructions, plans, drawings, receipts, facilities, and memoranda or every description of SUBCONTRACTOR related to the subject hereof. SUBCONTRACTOR shall upon completion of the work turn over to CONTRACTOR all papers, records, data, etc., for CONTRACTOR'S files or the files of OWNER as maybe required.

## XII. CONTRACTOR STATUS

All work shall be done and performed by SUBCONTRACTOR as an independent contractor, free from control or supervision of CONTRACTOR as to means and method of performing the work contemplated hereunder. SUBCONTRACTOR is an employer, as that term is defined in the Federal Social Security Act and the unemployment insurance laws of the State in which the work is performed, and shall furnish CONTRACTOR with evidence of compliance with said laws.

SUBCONTRACTOR will have qualified for and received a contractor's license authorizing him to work as a contractor in the state in which the work is to be performed.

## XIV. TERMINATION

A. SUBCONTRACTOR agrees that if it should fail, at any time during the performance hereof, to fulfill its warranty obligations hereunder, or should breach this SUBCONTRACT AGREEMENT in whole or in part, or fail to use due diligence in the performance thereof, or should not be performing the work contemplated in the manner herein provided, or should be adjudged bankrupt, or a Receiver be appointed for SUBCONTRACTOR, CONTRACTOR may at its election, after giving SUBCONTRACTOR forty-eight (48) hours' written notice of its intention so to do, take over the work and prosecute same to completion, by contract or otherwise.

B. If the unpaid balance of the SUBCONTRACT PRICE shall exceed the cost and expense to CONTRACTOR of completing, or causing to be completed, said work and construction, including the cost of additional managerial and administrative services, such excess shall be paid to SUBCONTRACTOR. If the cost and expense to CONTRACTOR, mentioned in the last preceding sentence hereof, should exceed said unpaid balance of the SUBCONTRACT PRICE, SUBCONTRACTOR shall pay immediately upon demand the difference to the CONTRACTOR.

C. Should the PRINCIPAL CONTRACT be terminated for any reason between OWNER and CONTRACTOR, it is agreed that this SUBCONTRACT AGREEMENT may be terminated between CONTRACTOR and SUBCONTRACTOR on the same basis as the PRINCIPAL CONTRACT is terminated.

D. In the event CONTRACTOR terminates this SUBCONTRACT AGREEMENT without cause CONTRACTOR shall pay SUBCONTRACTOR for all costs incurred prior to termination and thereafter in effecting an orderly demobilization, assuming that CONTRACTOR, and SUBCONTRACTOR, on mutual agreement, concur with the actual costs assumed up to the point of termination, including the cost of termination.

## XV. ASSIGNABILITY AND SUBCONTRACTS

The terms, covenants, and conditions of this SUBCONTRACT AGREEMENT shall be binding on, and shall inure to the benefit of, the parties hereto and their respective heirs, representatives, successors, and assigns; provided that SUBCONTRACTOR shall neither transfer nor assign this SUBCONTRACT AGREEMENT, nor any part hereof, nor interest herein, nor sublet or subcontract to another any of the work, services, or obligations to be performed hereunder, without the consent in writing of CONTRACTOR, being first had and obtained. Any such transfer, assignment, subletting, or subcontracting without CONTRACTOR'S consent shall be void.

## XVI. NOTICE

Notice, whenever permitted or required pursuant to the terms of this SUBCONTRACT AGREEMENT, shall be given in writing, by registered or certified mail, hand delivery, telex, or facsimile, and shall be deemed to have been served when delivered to and receipted by the receiving party at the respective addresses shown herein:

| To Contractor: | To Subcontractor: |
|---|---|
| **TROY CONSTRUCTION LLP** | **JOHNSON CONSTRUCTION** |
| 8521 McHard Road | |
| Houston, Texas 77053 (Physical Address) | |
| | |
| P. O. Box 450862 (Mailing Address) | P. O. BOX 1242 (Mailing Address) |
| Houston, Texas 77245 | Cleveland, Tx 77328 |
| Telephone: 281-437-8214 | Telephone: 281-659-1426 |
| Facsimile: 281-437-9580 | Facsimile: 281-593-0975 . |

or to such other address or addresses as the party to receive notice shall hereafter designate in writing.

## XVII. GOVERNING LAW

SUBCONTRACTOR and CONTRACTOR agree that this SUBCONTRACT AGREEMENT shall be governed by, construed, and interpreted in accordance with the applicable laws of the State of Texas. Exclusive jurisdiction over any case or controversy arising under this SUBCONTRACT AGREEMENT shall be vested in any court of competent jurisdiction located within the State of Texas. Any and all objections or defenses as to choice of law and

venue are hereby waived.

"All claims, disputes and other matters in question which are unable to be resolved and arising out of or relating to the SUBCONTRACT may be decided by mutual consent by Arbitration, which shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect. This agreement to arbitrate shall be specifically enforceable. Any arbitration hearing between CONTRACTOR and SUBCONTRACTOR shall be held in Houston, Texas. The award rendered by the arbitrators shall be final and conclusive, and judgment may be rendered upon it in accordance with the applicable laws in the court having jurisdiction."

## XVIII. SEVERABILITY
Every part, term, or provision of this SUBCONTRACT AGREEMENT is severable from all others, and notwithstanding any possible future finding by a duly constituted authority that a particular part, term, or provision is invalid, void, or unenforceable, this SUBCONTRACT AGREEMENT has been made with the clear intention that the validity and enforceability of the remaining parts, terms, and provisions shall not be affected thereby.

## XIX. HEADING
The heading and subheading of provisions contained herein are used for convenience and ease of reference, and in no way define, limit, or describe the scope of intent of the SUBCONTRACT AGREEMENT or any of its provisions.

## XX CONSEQUENTIAL LOSS EXCLUSION
IN NO EVENT WILL EITHER PARTY BE RESPONSIBLE OR HELD LIABLE TO THE OTHER FOR PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LIABILITY FOR LOSS OF USE OF ANY NEW FACILITIES ARISING OUT OF THE WORK OR OF ANY EXISTING PROPERTY, LOSS OF PROFITS, LOSS OF PRODUCT OR BUSINESS INTERRUPTION HOWEVER THE SAME MAY BE CAUSED, INCLUDING THE FAULT OR NEGLIGENCE OF EITHER PARTY. HOWEVER, THIS PARAGRAPH WILL ONLY BE EFFECTIVE ONCE THE SAME INTENT AND SCOPE ARE BOTH INCORPORATED INTO EACH PRIME CONTRACT.

IN WITNESS WHEREOF, the parties hereto have caused this SUBCONTRACT AGREEMENT to be executed in their respective corporate or company names by their duly authorized respective officers on the day and year first above written.

CONTRACTOR

ATTEST:

By: _Roberta Burg_

Print Name: _Roberta Burg_

Title: _Admin. Asst._

Date: _10/20/06_

TROY CONSTRUCTION, LLP

By: _M.E. Jamison_

Print Name: _M.E. Jamison_

Title: _VP_

Date: _10/20/06_

SUBCONTRACTOR

ATTEST:

By: _Charles Pierce Jr._

Print Name: _Charles Pierce Jr._

Title: _Advisor_

Date: _Oct/14/06_

JOHNSON CONSTRUCTION.

By: _Michael Johnson_

Print Name: _Michael Johnson_

Title: _President_

Date: _Oct/14/06_

# EXHIBIT "A"

## SCOPE OF WORK

Johnson Construction is to furnish all labor, materials, and equipment required to perform ROW clearing and grading on the Enbridge DC-36-BC project as outlined in their proposal dated September 27, 2006 (a copy of which is attached) and to also include all environmental requirements except as noted in proposal pertaining to their work.

Johnson Construction has reviewed the contract drawings and specifications and has based their proposal to construct work listed above upon such documents and their requirements except as listed in their above referenced proposal.

Time is of the essence. Johnson Construction is to begin work as soon as practical and complete work per schedule.

# EXHIBIT "B"

## PAYMENT

- Shear cut, pile, & burn on top of ground in ROW
- Clear ROW 100' plus work areas where needed
- Mobilization and moves due to creeks, rivers, RR crossings
- Spotting mats & flume (provided by others to nearest road)
- Side flag ROW
- Leave timber for rip rap if deemed necessary by Johnson & Troy Construction
- Fence gaps – 50 each

All of the items listed above ........................................................... $8.50 per linear foot

Gaps (additional above 50 included above, if required) ........................... $800.00 per gap

Five-strand Barbed Wire Fence w/ Metal T-post (as required) ............... $3.75 per linear foot

Additional moves due to landowner conflicts, land acquisition, etc. ............ $5,500.00 per move

Crew shut down due to conflicts with landowner, land acquisition, etc. ..... $3,500.00 per hour
   (Applies after first two (2) hours of shut down)

Items excluded:

- Erosion Control/SWPPP
- Environmental Access
- Center Line & Offset Stakes
- Foreign pipeline/utility location
- Flume and/or mats to nearest road crossing

Payments to be as outlined in Section VII of Subcontract Agreement.

# JOHNSON CONSTRUCTION

P. O. Box 1242 Cleveland, TX 77328  (281) 659-1426 (281) 592-6389 Office  (281) 593-0975 Fax

ATT: Jerry Blaesdel, James Stavinoha
Troy Construction
8521 McHard Rd.
Houston, TX 77053
Jstavinoha@troyconstruction.com

Date:  September 27, 2006
PROPOSAL

PROJECT:  DC-36-BC (BETHEL - CROCKETT)

Johnson Construction is pleased to submit the following quote for DC-36-BC Bethel - Crockett beginning at the North end of Project going South

PROPOSAL INCLUDES

- Shear Cut, Pile & Burn on Top of Ground in Right of Way
- Clear Right of Way 100' Wide Plus Work Areas Where Needed
- **\*\*** Mobilization & Moves Due to Creeks, Rivers, Railroad Crossings
- Spotting Mats & Flume (Troy Provides to Nearest Road / Access if needed)
- Side Flag
- Will Leave Timber for Rip Rap if Johnson & Troy Field Reps Deem Necessary
- 50 Gaps

| PROPOSAL (ALL OF THE ABOVE) | UNIT | EST QTY | UNIT PRICE | EXTENDED |
|---|---|---|---|---|
| Gaps (additional ones over the 50 if needed) | FT | 340000 | $   8.25 | $  2,805,000.00 |
| 5 Strand Barbed Wire Fence w/ Tpost (if needed) | EA | ? | $   800.00 | |
| | FT | ? | $   3.75 | |

** Additional moves due to landowner conflicts, land acquisition will be additional cost of $5500.00 per move There will be an additional charge of $3500.00 each hour after the first two hours of shut down  if project is shut down due to conflict(s) with landowners, land acquisition,  not including conflicting weather

PROPOSAL *DOES NOT* INCLUDE

- Erosion Control / SWPP
- Environmental Access
- Stakes (Center Line & Offsets if Needed)
- Line Locates
- Flume &/or Mats to Nearest Road Crossing
- Gaps

You may reach Michael mobile today @ (281) 797-7087.

Respectfully Submitted,

Tresha Johnson
Johnson Construction
johnsonconstruction@yahoo.com
(713) 775-7707 cell